NOT DESIGNATED FOR PUBLICATION

No. 128,477

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CODY DAVIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Submitted without oral argument. Opinion filed July 17, 2026. Reversed in part, vacated in part, and remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., COBLE and PICKERING, JJ.

PER CURIAM:  Cody Davis appeals the Sedgwick County District Court's revocation of his probation, arguing that the court abused its discretion in two ways by basing its decision on:  (1) conduct that had previously served as the basis for a jail sanction, and (2) a misunderstanding of the operative facts. He also claims his underlying sentence is illegal because the district court improperly used a class C person misdemeanor to consolidate offenses to create a person felony for his criminal history score. He further contends that the district court erred in denying him jail time credit because he had been awarded credit in another case. After thorough review, we agree the

1

district court based its revocation on a mistake of fact and reverse the revocation of probation. We also find that, since we are remanding to the district court, it can determine the nature of Davis' Nevada conviction to address his appropriate criminal history score. Finally, we agree that his jail time credit must be reconsidered in light of our Supreme Court's decision in *State v. Ervin*, 320 Kan. 287, 311-12, 566 P.3d 481 (2025).

FACTUAL AND PROCEDURAL BACKGROUND

For purposes of this appeal, the circumstances surrounding Davis' offense of conviction are immaterial to the issues raised on appeal. Ultimately, he entered a guilty plea to the charge in exchange for certain sentencing recommendations from the State. The State agreed to recommend the mitigated penalty within the applicable grid box and to recommend a dispositional departure to probation based on Davis' mental health, on the availability of an appropriate treatment program to address his mental health and anger management issues, and on Davis' commitment to address his substance abuse problems.

Before sentencing, Davis filed a motion for a dispositional departure. At sentencing, the district court noted that the presentence investigation (PSI) report categorized Davis with a criminal history score of B. Neither party objected. The district court sentenced Davis to an underlying prison term of 120 months and 24 months of postrelease supervision but granted him a dispositional departure to probation for 36 months. Based on the State's recommendations, the district court ordered Davis to remain in jail on a 60-day sanction with the potential for early release if space within an inpatient drug and alcohol program became available. Davis served approximately three weeks of this sanction before the court ordered his release to an opening at Options (a men's residential facility for substance use disorder treatment) on May 23, 2024.

2

On July 3, 2024, the State filed a warrant alleging two violations of the conditions of Davis' probation. The State alleged that Davis failed to report to his probation officer as directed on June 6, 2024, and that he failed to notify his probation officer that he was "moving out of inpatient treatment at the Substance Abuse Center of Kansas" (SACK) on that same date.

At the first scheduled probation revocation hearing, Davis was physically brought into court in a restraint chair. He was completely unresponsive, so the district court continued the hearing. A little over a month later, the court held another hearing in September 2024. Davis admitted the allegations in the warrant. Based on these admissions, the court found that Davis had violated the conditions of probation, extended his term of probation by 36 months, and imposed another 60-day sanction with early release conditioned on the availability of a room within the residential program.

About two weeks later, Davis' intensive supervision officer (ISO) claimed—and the court issued an order to appear based on the claim—that Davis was unsuccessfully discharged from his drug and alcohol treatment program on the same date of the prior allegations, June 6, 2024. At the subsequent hearing, held in October 2024, Davis argued that he was not discharged from the program; he claimed he never attended the program. Davis admitted that he had been enrolled in the program and had been offered transportation to the program but claimed that he never attended the program—"never made it to there." Because Davis disputed the allegations, the court scheduled a hearing.

A few days later, the court held an evidentiary hearing on the State's allegations. Aaron Allen, an ISO, and the clinical care manager of Crossover Recovery Center of SACK, Julian Masters, provided the only testimony. Masters testified that Davis reported to the recovery center as early as May 13, 2024, and thereafter Davis came back a few times for the center's pretreatment services, but Davis eventually stopped engaging. On

3

June 12, 2024, Davis was informed that a place in treatment had opened and would be available the following day. Davis failed to report for admittance into the program.

Notwithstanding the discrepancy in the dates, the State asked the court to find that Davis never reported to treatment despite a bed being available for him, and then he failed to continue meeting with pretreatment. Davis' attorney agreed that he never made it to treatment on June 13, 2024, and he was "in basic agreement that he did not" show up. After hearing the evidence, the district court found that Davis had violated the conditions of his probation by failing to enter inpatient treatment when a position became available. The district court squared this finding with the State's originally filed allegation of Davis being unsuccessfully discharged by explaining that

> "the defendant had a bed date at Options, he didn't need to enroll, he had a bed date, that was his enrollment. He failed to show up for that bed date and he was discharged unsuccessfully for failing to appear for his bed date. If you don't show up for your bed date, what else are they going to do, except for unsuccessfully discharge you? And that was the testimony of the ISO. So, there was also some confusion about the date. The ISO testified that if you failed to meet once or appear once for that, there might be another engagement, or for him to come in at a later date, so that could have been 6-6, ultimately the first time he missed it, and then 6-13 when he finally missed it. It appears that the parties are in agreement as to the date of 6-13, so I'm going to make that change by interlineation, so the allegation in the order to appear that the defendant—that on 6-13-2024 the defendant was unsuccessfully discharged in drug and alcohol treatment, the Court makes a finding by preponderance of the evidence that the defendant failed to appear at Options for his bed date and was unsuccessfully discharged from that treatment and is in violation of his probation."

In its ruling, the district court reasoned that, although the earlier probation violation hearing had been held, and probation reinstated so Davis could go to residential treatment, it remarked that:

4

"At the time of that hearing, we didn't have all the information and there was the misrepresentation that [Davis] successfully completed this drug and alcohol treatment, one; and two; the recommendations of the—there was not an updated recommendations sheet from Community Corrections . . . so that all that information was not available to the Court at the time . . . at the last hearing."

Defense counsel objected to this characterization of the evidence offered at the earlier hearing, arguing that Davis had admitted to failing to notify his ISO when he left SACK but that Davis had never claimed to have completed drug treatment. He further argued that the State had presented no new information that would justify revocation of Davis' probation. The district court disagreed, finding Davis' prior "representation was that he completed that program, at the time of the last hearing, [and that's] not what we're hearing now." Reviewing the recommendations of the ISO, the court noted that Davis had stopped reporting, that there had been reports of battery on law enforcement, and that the ISO had concluded that "[d]ue to the defendant's behavior while in jail and the safety of our staff and other clients," Community Corrections no longer recommended Davis for a residential program with work release. Community Corrections' recommendation was that Davis posed a public safety risk if released.

Ultimately, the district court found that, "based upon the misrepresentations of that prior hearing," and the findings of the allegations in the most recent order to appear, Davis was "not amenable to probation, that he is a safety risk and that he should serve the underlying sentence" of 120 months. In its journal entry revoking Davis' probation, the court cited public safety concerns and the fact that probation was originally granted to Davis as a dispositional sentencing departure. The district court awarded Davis 650 days of jail time credit but denied him 42 days of credit, from September 8, 2022, to October 31, 2022, when he was apparently serving jail time for other City of Wichita cases.

Davis has timely appealed his probation revocation.

5

I.      *Did the district court err by revoking Davis' probation?*

Davis contends that the district court revoked his probation because of a violation for which he had already been sanctioned, and therefore lacked jurisdiction to revoke his probation. He also argues that the district court misunderstood the operative facts. We address each challenge in turn.

A.  *Davis' jurisdictional argument*

Davis frames his first argument as a jurisdictional error. We must first address whether this claim is preserved. Davis acknowledges that this issue was not presented to the district court and, as a result, was not properly preserved but argues that we may consider it for the first time on one of two bases. First, this court may consider jurisdiction on its own initiative. Subject matter jurisdiction may be raised at any time, whether for the first time on appeal or on the appellate court's own motion. Whether jurisdiction exists is a question of law, subject to unlimited appellate review. *State v. Clark*, 313 Kan. 556, 560, 486 P.3d 591 (2021).

Alternatively, Davis contends that our consideration of the issue is necessary to prevent the denial of a fundamental right—his liberty interest in probation. An appellate court possesses discretion to consider an issue raised for the first time on appeal if the appellant demonstrates the applicability of a judicially recognized exception to preservation. See *State v. Mendez*, 319 Kan. 718, 730, 559 P.3d 792 (2024) (recognizing preservation exceptions but noting that appellate consideration remained prudential).

Once a district court places a convicted offender on probation, the individual obtains a limited liberty interest in continued probation. *Gagnon v. Scarpelli*, 411 U.S.

778, 781-83, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); *State v. Miller*, 20 Kan. App. 2d 378, 385, 888 P.2d 399 (1995). While an offender in a probation revocation proceeding is not entitled to the same protections as in the original criminal proceeding, due process requires written notice of the claimed violations of probation, disclosure of the evidence, a meaningful opportunity to be heard in person and to present evidence, the right to confront adverse witnesses, a neutral and detached hearing body, a written statement by the factfinder of the evidence used and reasons for revoking probation, and the assistance of counsel. *State v. Hurley*, 303 Kan. 575, 582, 363 P.3d 1095 (2016). Accordingly, an improper consideration during a probation revocation implicates a fundamental right—due process. So, this court, in its discretion, may consider Davis' challenge for the first time on appeal.

None of the cases Davis cites support his position that the circumstances deprived the district court of jurisdiction. Subject matter jurisdiction is the authority of a court to hear a particular type of case or legal dispute. *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016). District courts possess subject matter jurisdiction over criminal matters, including probation revocation, by the Kansas Constitution and enabling legislation. Kan. Const. art. 3, § 1; K.S.A. 20-301; K.S.A. 22-2601; *Dunn*, 304 Kan. at 789.

Although Davis contends that his probation was revoked for the same underlying conduct for which he had already been sanctioned, his argument is better characterized as a due process argument rather than a jurisdictional one. "[O]nce the privilege of probation has been bestowed upon a defendant, he or she acquires a conditional liberty interest which is subject to substantive and procedural due process limits on its revocation." *Hurley*, 303 Kan. at 581.

Davis contends that the district court could not use the same conduct that constituted a probation violation to both extend his probation and then revoke his probation, citing *Hurley*, 303 Kan. at 581-82, as support for this proposition. But *Hurley*

7

is distinguishable. In *Hurley*, the defendant originally stipulated to a probation violation. The district court revoked probation and then reinstated probation for an additional term. The district court then revoked probation after finding Hurley in contempt of court. The Kansas Supreme Court concluded that the revocation was proper only if Hurley's contempt of court constituted a violation of the conditions of probation and Hurley had been given an adequate opportunity to dispute the charge of contempt. 303 Kan. at 581.

Here, Davis was ordered, as one condition of probation, to successfully enter and complete a substance abuse treatment program. He was also ordered, as separate conditions, to both report to his ISO and to report to that officer within 24 hours any change in his residence, employment, or phone number. These are three separate conditions required for him to maintain his probationary status.

In the first warrant, the State alleged that Davis failed to report to his probation officer as scheduled and failed to notify his probation officer of a change in residence after leaving inpatient treatment on June 6, 2024. Davis admitted to both allegations in the warrant.

The successful completion of a substance abuse treatment program was one of Davis' conditions of probation when he was originally sentenced, but this was not listed as one of the violations alleged in the first warrant. The same conditions were imposed after the district court extended Davis' probation. So, if Davis refused or failed to complete treatment, it would form the basis for a separate violation, even if the violation were part and parcel of the first two violations. When a substance abuse treatment program made space for Davis and offered him transportation on June 12, 2024, Davis violated the condition of his probation to complete substance abuse treatment by failing to show up and thus refusing to attend the program. Although this is a close call, given that the three violations all ultimately relate back to Davis' singular failure to enter and complete residential treatment, the violations are of three separate conditions of probation

8

and so are not duplicative. Accordingly, there was no violation of Davis' rights to due process.

B. *Misunderstanding of the operative facts*

Davis next contends that the district court abused its discretion in revoking his probation based on a misunderstanding of the operative facts. Davis contends that the district court revoked his probation because it believed Davis had lied in a previous hearing about completing inpatient drug treatment.

Once a probation violation has been established, the district court's decision to revoke the offender's probation and impose the original sentence rests in the court's discretion. A court abuses that discretion if its decision is based on an error of law or fact or is otherwise arbitrary, fanciful, or unreasonable. Davis, as the party contending the court abused its discretion, bears the burden of establishing such abuse. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022).

Davis argues that the district court's decision to revoke was based on erroneous facts because the court believed Davis had lied about completing inpatient drug treatment at the previous hearing.

During the initial probation violation hearing in September 2024, Davis admitted to the allegations in the State's warrant. But none of the parties informed the district court of Davis' refusal to appear for treatment, only describing his failure to report to his ISO and failure inform his ISO that he "mov[ed] out of inpatient treatment at [SACK]." The State questioned the ISO's recommendation for Davis to "enter and complete the residential program" because the current allegation was "for not reporting to his ISO after release from treatment already," and explained the prosecutor was reading from an August recommendation report but had no updated information and assumed the report

9

was still valid. Ultimately, the State did not oppose the recommendation. Defense counsel encouraged the court to reinstate probation with placement in the residential program to give Davis the structure he required. The court then asked Davis if he wished to speak on disposition. Davis stated:

> "I'm ready to be released. I reported to the probation officer many times. I left a message. I'm homeless. SACK had me transportation a lot of times to that treatment center. It was just—I missed, like, one time that I didn't get to crossover on time for the transportation. I can get to crossover at SACK today.
>
> . . . .
>
> "I'm ready to be released. I am more than confident. I'm perfect. I've been in here not 60 days. Like I was saying, it was a missed—I've been to crossover and SACK many times. One time they had transportation for me and I missed it, because I'm homeless and I didn't get there and it was raining. After that I had troubles, but I'm ready to go today. I can get to crossover. I can get to SACK. I know if you have transportation for me to get there today, or if I have to go to SACK or whatever, I will get to that Residential.
>
> . . . .
>
> "The changes are I'm—like I said, I'm more than confident now, and I—like I said, I can go there now. I'm willing to not violate the system, challenge the system. I can do it right now. I'm physically rehabilitated. Like I was saying, I was homeless at the time. Right now I'm in perfect physical health, and I'm willing to get there.
>
> "The next thing I was going to say is that I'm willing now, if you understand what I'm saying. I was kind of challenging the system before. Now I'm willing to go through what you want to have me do. That would be the change."

At the second revocation hearing in October 2024, the district court recollected that Davis had represented to the court that he had successfully completed treatment. The court also noted that, at the previous hearing, the court did not have the benefit of the updated recommendations from community corrections, but again, made its findings "based upon the misrepresentations of that prior hearing."

Based on review of the transcript, the district court's characterization of Davis' statements as a misrepresentation about completing treatment was unjustified. Davis openly admitted, in the first hearing, that he never took advantage of transportation to the residential facility; so, since he admitted to never accepting transportation to the program, he never represented to the court that he completed the residential program. While Davis did not necessarily volunteer information that he had been offered placement at a substance abuse treatment program and failed to appear, the record also does not show that Davis actively concealed the information. His participation in a substance abuse treatment program was not specifically questioned by the court; in fact, the entirety of the persons present at the first hearing seemed to be confused as to the difference between SACK—a day center—and Crossover, and the Options residential program, and how Davis was meant to attend the apparently different programs. During the first hearing, Davis raised his participation in SACK, but it was not until the second hearing when Masters, the clinical care manager of the Crossover Recovery Center, emphasized that SACK was not a treatment facility. So, while Davis spoke about his attendance (and failures to attend) Crossover and SACK at the first violation hearing, no one ultimately discussed his failure to attend the residential treatment program at Options during the first violation hearing.

The district court and the State appeared not to have been aware of these circumstances during that first hearing, and Davis had a limited constitutional right not to introduce evidence that would incriminate himself. The right did not protect Davis from truthfully responding to questions by the court regarding his conduct, as long as the answers would not have subjected Davis to additional criminal liability, but the right did not require Davis to volunteer information that could be used to revoke his probation. See *State v. Gary*, 282 Kan. 232, 249-50, 144 P.3d 634 (2006). To hold otherwise would be to eviscerate the State's burden to prove a violation of the conditions of probation by a preponderance of the evidence. See *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006).

11

In the first violation proceeding, no questions were asked of Davis about his actual attendance at a residential treatment program. Since he had no obligation to offer that information, there is no evidence of fraudulent concealment, nor is there any misrepresentation, based on a review of the transcript. See *Gary*, 282 Kan. at 249-50 (finding where a defendant "makes an affirmative misrepresentation to the district court . . . which misrepresentation is relied upon by the district court in granting probation, the defendant's probation after notice and hearing may be revoked based upon such misrepresentations"; and that a defendant has no independent, affirmative obligation to incriminate himself by revealing a separate violation). Here, the district court based its decision to revoke, in part, on an error of fact—that Davis had lied to the court—and as a result, this constituted an abuse of discretion.

The case is remanded to the district court with instructions to place Davis back on probation under the original conditions.

II.     *Illegal Sentence and Criminal History Challenge*

Davis next contends that the district court improperly aggregated three person misdemeanor convictions to count as a person felony because one of the misdemeanor offenses was a class C misdemeanor.

Davis acknowledges that he did not object to the aggregation or to his criminal history score at sentencing. But he contends that this court can review the issue for the first time because it raises a claim of illegal sentence. An appellate court may correct an illegal sentence at any time the defendant is serving the sentence, permitting a litigant to challenge a sentence as illegal for the first time on direct appeal. K.S.A. 22-3504(a); *State v. Steinert*, 317 Kan. 342, 351-52, 529 P.3d 778 (2023). An illegal sentence is a sentence imposed by a court without jurisdiction, one that fails to conform to the applicable statutory provision, either in character or term of punishment, or one that is ambiguous

12

regarding the time and manner in which it is to be served. K.S.A. 22-3504(c)(1); *State v. Mitchell*, 315 Kan. 156, 158, 505 P.3d 739 (2022). When an offense falls within the purview of the Kansas Sentencing Guidelines, its sentence is calculated using the severity level of the offense and the offender's criminal history score. *State v. McCray*, 321 Kan. 439, 442, 580 P.3d 682 (2025). Accordingly, if the district court assessed either a severity level or criminal history score in violation of applicable statutory parameters, the resulting sentence would be illegal.

The State agrees that the issue may be considered for the first time on appeal but argues that the burden to establish his criminal history rests on Davis. Under K.S.A. 21-6814(b), a criminal defendant's PSI report is presumptive proof of the defendant's criminal history, unless the criminal defendant objects. While a criminal defendant is not precluded from raising a challenge to a criminal history score for the first time on appeal, he or she bears the burden of designating the record demonstrating the error. Absent such designation, the appellate court must dismiss the claim. K.S.A. 21-6814(d).

For purposes of calculating a criminal defendant's criminal history score, three class A or B person misdemeanor offenses are aggregated into a person felony. See K.S.A. 21-6811(a).

In Davis' PSI, his listed criminal history included a 2007 assault conviction in Nevada, and two municipal convictions for battery on a law enforcement officer in Wichita in 2022. These three convictions were aggregated under K.S.A. 21-6811(a) to count as a person felony. This person felony, along with an aggravated assault conviction in South Dakota in 2009, constituted the two person felonies underpinning Davis' criminal history score of B.

Davis does not challenge the inclusion of the Wichita municipal convictions. But he disputes the inclusion of the Nevada conviction for assault, claiming that the inclusion

13

of the offense was not based on evidence that the prior conviction would be classified as a class A or B person misdemeanor if committed in Kansas.

To classify a prior out-of-state conviction for a misdemeanor as a person crime, K.S.A. 21-6811(e)(2)(B) directs the State to compare the out-of-state offense, as classified by the convicting jurisdiction, to the most comparable Kansas offense, as of the date of the commission of the current crime of conviction, to determine whether the out-of-state offense should be designated a class A, B, or C misdemeanor. *State v. Smith*, 209 Kan. 929, 934, 441 P.3d 472 (2019). If Kansas does not have a comparable offense, the out-of-state conviction will not be classified. Similarly, K.S.A. 21-6811(e)(3)(A) directs the State to use a similar comparison to classify the out-of-state misdemeanor conviction as a person or non-person crime.

According to the PSI report, Davis' prior Nevada conviction for assault was based on a violation of Nev. Rev. Stat. Ann. § 200.471. In 2007, the definition of assault in Nevada was "intentionally placing another person in reasonable apprehension of immediate bodily harm." Nev. Rev. Stat. Ann. § 200.471(1)(a) (2007). Under this statute, unless the assault was committed on a class of persons listed in the statute by a prisoner, probationer or parolee, or done with a deadly weapon, the assault was classified as a misdemeanor. Nev. Rev. Stat. Ann. § 200.471(2)(a) (2007). If the assault was committed against a "peace officer," the crime was classified as a "gross misdemeanor." Nev. Rev. Stat. Ann. § 200.471(2)(c) (2007). Since the PSI did not indicate application of any of the statutory heightened penalty provisions, without additional information, we cannot tell how the crime was classified in Nevada.

In 2022 in Kansas, assault was defined identically with Nevada as "intentionally placing another person in reasonable apprehension of immediate bodily harm," and was classified as a class C person misdemeanor. K.S.A. 2022 Supp. 21-5412(a). However, assault of a law enforcement officer in 2022 was classified as a class A person

misdemeanor. K.S.A. 2022 Supp. 21-5412(e)(3). Without knowing the classification of the victim of the assault in Nevada, we cannot state with certainty that Davis was convicted of conduct that would have been classified as a class C person misdemeanor in Kansas in 2022.

Davis' successful challenge to the district court's inclusion of the Nevada misdemeanor conviction hinges on the identity of the victim in the Nevada case. If the victim was a law enforcement officer, inclusion of the Nevada conviction was proper. If the victim was any other person, inclusion of the Nevada conviction was improper. But the record contains no information about the Nevada conviction other than the information provided in the PSI report.

Because Davis did not object to his criminal history score or, more particularly, the inclusion of the Nevada conviction to aggregate three of his person misdemeanor convictions, he bears the burden of designating a record to establish error by the court. K.S.A. 21-6814(d). To carry this burden, Davis is permitted to provide the appellate court with journal entries of the challenged portion of his criminal history, but he did not. K.S.A. 21-6814(d); *State v. Emery*, 66 Kan. App. 2d 42, 51, 577 P.3d 620 (2025). When the appellant fails to designate a record that shows prejudicial error, the appellate court must dismiss the claim, although the court also has the power to "remand the case if there is a reasonable question as to whether prejudicial error exists." K.S.A. 21-6814(d).

Given the reasonable question raised about whether Davis' Nevada conviction was a gross misdemeanor, and the remand on the probation revocation issue, we likewise remand this issue to the district court to determine the nature of the victim of the Nevada conviction for assault. Davis is then free to raise and support his challenge to his criminal history on remand.

III.    *Jail Time Credit*

Davis' final claim in his appeal challenges the district court's award of jail time credit. The district court denied Davis credit for time spent in the Sedgwick County Jail from September 20, 2022, to October 31, 2022, because Davis was incarcerated during that time on municipal court charges.

Davis again acknowledges that he did not raise this issue in the district court. He seeks review under the preservation exception for an issue of law on uncontested facts. The general rule is that an appellate court does not consider issues raised for the first time on appeal, even those of a constitutional dimension. *Mendez*, 319 Kan. at 730. An appellant may persuade the court to consider an issue raised for the first time on appeal by arguing the application of one or more judicially recognized exceptions to the preservation rule. 319 Kan. at 730. Although Davis has argued the applicability of the issue-of-law exception, appellate review remains prudential. 319 Kan. at 730-31.

To the extent that Davis' argument does not require any fact determinations, appellate courts have previously considered a challenge to the sufficiency of a jail time credit award for the first time on appeal. See *State v. Sharkey*, No. 127,822, 2025 WL 2993742, at *1 (Kan. App. 2025) (unpublished opinion). As in *Sharkey*, the State does not raise an opposition to raising the issue for the first time on appeal, arguing for the applicability of one of the amended versions of K.S.A. 21-6615.

Both parties agree that K.S.A. 21-6615 governs the award of jail time credit, but the parties reach differing opinions on which version of that statute applies. Before May 23, 2024, K.S.A. 21-6615(a) provided that jail time credit "shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case."

16

In *State v. Hopkins*, 317 Kan. 652, 537 P.3d 845 (2023), and *State v. Ervin*, 320 Kan. 287, 311-12, 566 P.3d 481 (2025), the Kansas Supreme Court interpreted this language in K.S.A. 21-6615(a) to mean that a criminal defendant is entitled to jail credit for time spent incarcerated awaiting resolution of criminal charges in a particular case. And, if the defendant is held in jail awaiting resolution of multiple cases, he or she is entitled to jail credit for that time in each of those cases so long as he or she is held on those cases.

In response to *Hopkins*, the Kansas Legislature amended K.S.A. 21-6615. See L. 2024, ch. 96, § 7. The 2024 amendments designated the former subsection (a) as (a)(1) and added a second subsection, which provides:

"(2) When computing the defendant's sentence, the following shall not be considered time spent incarcerated pending disposition of the defendant's case:
(A) Any time awarded as credit in another case when consecutive sentences are imposed on a defendant; or
(B) any time spent incarcerated in another jurisdiction if no hold has been issued in such jurisdiction for the case being sentenced." K.S.A. 2024 Supp. 21-6615(a)(2).

Davis committed his crime on September 19, 2022. The State concedes that K.S.A. 2024 Supp. 21-6615(a) was not effective until May 23, 2024, after Davis was sentenced in this case. The State contends, however, that the amendments were effective when Davis' probation was revoked and his sentence ultimately imposed.

The general rule governing legislative amendments is the version of the statute in effect when a criminal defendant committed the crime governs the criminal proceedings. See *State v. McLinn*, 307 Kan. 307, 337, 409 P.3d 1 (2018). The State acknowledges this rule but notes several appellate exceptions. The State argues that the Legislature clearly expressed an intent to correct a perceived misinterpretation of K.S.A. 21-6615(a) by the

17

Kansas Supreme Court and, therefore, intended the amendments to apply to all cases sentenced after the effective date.

This argument has been considered and rejected by a panel of this court in *State v. Mitchell*, 66 Kan. App. 2d 196, 205-07, 579 P.3d 970 (2025), *rev. granted* 321 Kan. 793 (2026). "In short, K.S.A. 2024 Supp. 21-6615(a) includes no language indicating that the legislature intended to apply it retroactively to pending cases awaiting sentencing. In the absence of any such indication, the 2024 amendments apply only to sentences for crimes committed on or after May 23, 2024." *Mitchell*, 66 Kan. App. 2d at 207.

Although we are not bound by a decision from a different panel of this court, we find the reasoning of *Mitchell* ultimately persuasive. *State v. Mason*, 66 Kan. App. 2d 209, 221, 579 P.3d 978 (2025), *petition for rev. filed* October 30, 2025. Because the *Mitchell* court addressed most, if not all, of the arguments the State raises in this case, we find no convincing reason to reexamine the points addressed in *Mitchell*. We also acknowledge that other decisions of our court have adopted the reasoning of *Mitchell*. See *State v. Owens*, No. 128,059, 2026 WL 850143, at *2-3 (Kan. App. 2026) (unpublished opinion), *petition for rev. filed* April 27, 2026; *State v. Elam*, No. 128,025, 2026 WL 787868, at *11 (Kan. App. 2026) (unpublished opinion), *petition for rev. filed* April 28, 2026. We see no reason to revisit the discussion here.

The State also challenges the correctness of the Kansas Supreme Court's reasoning in *Ervin* and *Hopkins*. While this court may distinguish Kansas Supreme Court precedent on controlling facts, it lacks the authority to overrule a decision by the Kansas Supreme Court. *State v. Warui*, No. 122,364, 2021 WL 5144508, at *3 (Kan. App. 2021) (unpublished opinion) (finding no basis to distinguish Supreme Court precedent and acknowledging duty to follow that precedent). This court is bound to apply Kansas Supreme Court precedent absent some indication that the court is departing from that precedent. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). The Kansas Supreme

Court has provided no indication that it is withdrawing from its statutory analysis of K.S.A. 21-6615(a) under *Ervin*. Rather, the court has reinforced its adherence to *Ervin* in a recent opinion. See *State v. Zongker*, 322 Kan. 137, 139, 586 P.3d 769 (2026).

Understandably, the State wishes to preserve the issue for potential review by the Kansas Supreme Court, but this court cannot provide the State with the relief from *Ervin* that the State seeks.

To the extent that Davis was held in the Sedgwick County Jail on this case, he is entitled to jail credit against the sentence imposed in this case, even if he also received credit in the Wichita municipal cases under the reasoning of *Ervin*. Accordingly, we vacate Davis' sentence as calculated and remand this case to the district court for reconsideration of the proper amount of jail time credit in the event Davis' probation were to be revoked in the future.

Reversed in part, vacated in part, and remanded with directions.